LUCIUS BRADLEY, Executor, etc., Appellant, *v.* THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, Respondent.

A policy of insurance contained the following clause: "In case the insured shall die by the hands of justice, or in the known violation of any law of the State he is permitted to visit, the policy should be void, null and of no effect." In an action on the policy,—*Held*, in order to justify the court in taking from the jury the question, whether the deceased came to his death in a manner covered by this clause, that whatever be the nature of the violation of law claimed as avoiding the policy, the death must clearly appear to have been the natural and legitimate consequence of such violation.

Accordingly, where the insured attempted to seize B's team, which B was driving, and B, abandoning the contest for the property, started for his house, but almost immediately turning, shot the insured, killing him,— *Held* (GROVER and PECKHAM, JJ., dissenting), that it was error in the court to refuse to allow the jury to pass upon the question, whether the death of the insured was caused by a known violation of law on his part, and whether the act of B, which produced the death, was a natural, reasonable, or legitimate consequence of the act of the insured.

Negative testimony is ordinarily of less weight than positive, but is not to be disregarded. The jury have a right to consider it, and where a witness testifies that he was in a position to see the whole transaction, and as to certain things testified to by another witness, states positively that they did not occur, and as to other things that he did not see them, there is such a contradiction as would justify the jury in discrediting or disregarding the evidence of either of the witnesses.

(Argued March 31st; decided May 23d, 1871.)

APPEAL from the judgment of General Term of the Supreme Court, in the first judicial district, affirming the decision of the Special Term, dismissing the complaint and ordering

judgment in favor of the defendant, for $419.06 costs and disbursements.

This action was brought upon a policy of insurance made by the defendant upon the life of M. J. Cluff, and assigned by him to B. E. Clark & Co., with defendant's consent, and subsequently assigned to B. E. Clark. Cluff died on the 25th of February, 1864, on a plantation hired and occupied by him, in Louisiana, having been shot by one Cox. The Cox family were squatters on the plantation, and had stock, which had been eating the feed belonging to the place. Cluff had tried to induce Cox's father to leave the plantation, but had not been successful. He had, some weeks before his death, sent a bill to the older Cox for the feed taken. On the day of the homicide, while standing by the gate of his plantation, he saw young Cox driving toward the house with a load of barrels filled with water. Cluff asked when the family were going to leave the place. Cox replied " they were going soon ;" Cluff then asked when they were going to pay that bill ; Cox replied they were not going to pay it ; Cluff said, " if you don't pay it I will take your horses ;" Cox replied, " you had better try it now ;" Cluff said, " if you think I can't I will let you see," and thereupon began to unhitch the horses. He took the horses from the wagon, and upon Cox refusing to loose the lines, took from his pocket a small pen-knife, and was about to cut them, when on Cox telling him not to do that, he desisted. There was some evidence of a struggle, and blows on the part of both. Cox started, as if to go to the house, but after going a few yards, turned, drew a pistol, and shot Cluff through the heart. He cocked the pistol for a second shot, but upon Cluff crying out that he was hit, ran to the house. This is the account of one of the witnesses. The other testified to a struggle and blows.

There was a provision in the policy that " in case the insured shall die in the known violation of any law of the State he should be permitted to visit, the policy should be void, null and of no effect." The complaint was dismissed upon the trial, on the ground that it appeared by the evidence that the death occurred in the known violation of the law of the State where

he then was. The plaintiff claimed that, as matter of law, he was entitled to a verdict upon the evidence, and, if not, he was entitled to go to the jury upon the question whether the death was the result of any violation of law by the deceased, but this was refused.

Cox was tried for the shooting by a provisional military tribunal and acquitted, on the ground that the homicide was justifiable.

The facts raising the question, as to the evidence of the transaction, are sufficiently stated in the opinion of the court.

*Benedict* and *Benedict,* for the appellant. The contract of life assurance is not a contract of indemnity, it is a mode of investment. (*Dalby* v. *The India and London L. & A. Soc.,* 28 Eng. L. & E., 317; *Miller* v. *The Eagle Life and Health Ins. Co.,* 2 E. D. Smith, 294; *Rawle* v. *Am. Life Ins. Co.,* 36 Barb., 362; *S. C.,* 27 N. Y., 282.) A policy of insurance is to be construed most liberally in favor of the assured. (*Palmer* v. *Warren Ins. Co.,* 1 Story, 360; *Yeaton* v. *Fry,* 5 Cranch, 335.) And an exception in a policy is to be taken strongest against the assurer. (1 Duer on Ins., 161; *Hindekofer* v. *Douglass,* 3 Cranch, 1; *Breasted* v. *The Farmers' Loan and Trust Co.,* 8 N. Y., 305; *Hoffman* v. *The Ætna Ins. Co.,* 32 N. Y., 405.) Capture means lawful capture. (*Swinnerton* v. *The Col. Ins. Co.,* 9 Bosw., 361; *S. C.,* 37 N. Y., 174.) The exception, "by suicide," not included, where the person was insane. (*Breasted* v. *Farmers' Loan and Trust Co.,* 8 N. Y., 305.) The cause of death must be the proximate cause. (3 Kent's Com., 302; Arnould on Ins., 764; *Williams* v. *The Suffolk Ins. Co.,* 3 Sum., 276.) This maxim is applicable, " *Causa proxima, non remota spectatur.*" (*Patrick* v. *Com. Ins. Co.,* 11 Johns., 14; *Tilton* v. *Hamilton Ins. Co.,* 14 How., 372.) Dying in the known violation of law, "must be confined to the case where the assured died in the commission of a felonly." (*Harper's Adm.* v. *The Phœnix Ins. Co.,*

19 Mo., 506; 39 Mo., 122; *Cluff* v. *The Mu. Ben. Life Ins. Co.*, 13 Allen, 309; 99 Mass., 319; *Breasted* v. *Farmers' Loan and Trust Co.*, 8 N. Y., 304.) Trespass against another's property will not warrant the use of a deadly weapon. (*Commonwealth* v. *Drew*, 4 Mass., 391; *State* v. *Brandon*, 8 Jones, Law, 463, N. C.; *State* v. *McDonald*, 4 Jones, Law, 19; *Noles* v. *State*, 26 Ala., 31; *People* v. *Kirby*, 2 Park. Cr. C., 28.) Death caused by resistance to illegal arrest is manslaughter. (*Commonwealth* v. *Carey*, 12 Cushing, Mass., 246; *Roberts* v. *The State*, 14 Miss., 138; *Jones* v. *The State*, 14 Miss., 409; *Rex* v. *Patience*, 7 Carr. & Payne, 776.) Cox violated the law of his State in carrying a pistol. (R. S. of La., 155, § 116.) It is the "*turpis contractus*," "the object repugnant to justice or public policy," which makes the contract void. (*Fairbrother* v. *Ansley*, 1 Camp., 348, note; *Gray* v. *Matthias*, 5 Vesey, 286; *Trovinger* v. *McBurney*, 5 Cow., 253; *Wait* v. *Day*, 4 Denio, 439; *Fellows* v. *Emperor*, 13 Barb., 92.) If the contract is void in part, it is void in all. (*Burt* v. *Place*, 6 Cow., 431; *Barton* v. *Port Jackson Plankroad Co.*, 17 Barb., 397; *Pepper* v. *Haight*, 20 Barb., 429.) As to the effect of this condition on *bona fide* assignees, see *Moore* v. *Woolsey* (28 Eng., L. & E., 251); *White* v. *British Empire Mutual Life Ins. Ass.*, (7 Eng., Eq., Cases, 394). No presumption arises when the law of a foreign State is the ground of a claim or defence. (Cow. & Hill's note, 1136; *Pomeroy* v. *Ainsworth*, 22 Barb., 129; 8 John, 193; *Cutler* v. *Wright*, 22 N. Y., 47).

*Alvin C. Bradley*, for the respondent. The assured took the risk of his conduct, and must bear it. (*Stone* v. *Hooper*, 9 Cow., 154; *Allaire* v. *Orland*, 2 John. Cas., 52; *Conerty* v. *Benton*, 17 John., 142; *Mount* v. *Waits*, 7 John., 434; *Burt* v. *Place*, 6 Cow., 431, 433; *Moore* v. *Woolsey*, 28 Eng. L. & E., 248.) If the event be such as the most explicit of policies could not relieve, it remains unaided in spite of general terms. (Phillips on Insurance, §§ 210, 219; *Camp-*

*bell* v. *Charter Oak Ins. Co.*, 92 Mass., 215 ; *Kelley* v. *Home Ins. Co.*, 97 Mass., 288.) Criminal law means any rule for the violation of which the State, in its own name, exacts a penalty or inflicts a punishment. (4 Black's Com., 5 N. 4, Christ. & Wend., ed.) No evidence having been given by either side of the law of Louisiana, the presumption is that it is the same as the common-law of this State. (*Holmes* v. *Broughton*, 10 Wend., 75 ; *Starr* v. *Peck*, 1 Hill, 270 ; *Legg* v. *Legg*, 8 Mass., 99 ; *Savage* v. *O'Neil*, 42 Barb., 374 ; *Ruse* v. *Mut. Ben. Life Ins. Co.*, 23 N. Y., 516 ; *Cutler* v. *Wright*, 22 N. Y., 472 ; *Cheney* v. *Delafield*, 23 Barb., 498 ; *Robinson* v. *Donalley*, 3 Barb., 20 ; *Langton* v. *Young*, 33 Vt., 136 ; *Smith* v. *Whittaker*, 23 Ill., 367 ; *Thompson* v. *Moore*, 2 Cal., 99 ; *Smith* v. *Gould*, 4 Mo., P., 21 ; *Brown* v. *Gunning*, D. & R. N. P., 41 n. ; *McCormick* v. *Garrett*, 5. D. M. G., 278 ; *Douglass* v. *Cray*, 2 Dow., 171 ; 1 Green, Ev., § 488, a.) Primary proofs are conclusive, and not open to contradiction by the plaintiff at the trial in any manner whatever. (*Campbell* v. *Charter Oak Life Ins. Co.*, 92 Mass., 213 ; *Cluff* v. *Mut. Ben. Life Ins. Co.*, 99 Mass., 317.) There was no question for the jury. The court had no alternative but to dismiss the complaint. (*Loomis* v. *Meeker*, 25 N. Y., 361 ; *Rudd* v. *Davis*, 3 Hill, 288 ; affd., 7 Hill, 529 ; *Haring* v. *Erie R. R. Co.*, 13 Barb., 9.)

RAPALLO, J. The question directly presented by this appeal is whether, upon the evidence adduced at the trial, any question of fact arose which should have been submitted to the jury.

The counsel for the plaintiff insisted that, whether Cluff came to his death under such circumstances as to defeat a recovery, was a question for the jury, and also requested the court to submit to the jury the question whether the death of Cluff was a reasonable, rightful or excusable result of any known violation of law by him. But the court declined to submit that question to the jury, and decided that there was no question of fact in the case for their determination, and

dismissed the plaintiff's complaint.    Exceptions were duly taken to these decisions.

To justify this disposition of the case, it must clearly appear that it was established upon the trial, by uncontroverted evidence, that the death of Cluff happened under such circumstances as to fall within the excepted risks mentioned in the proviso contained in the policy.

The first step in the inquiry is the construction of this proviso.    The exact interpretation to be given to the words " in case he shall die   *   *   *   in the known violation of any law of these States," etc., has been the subject of serious debate.    In another action upon a like policy of the same company on the life of the same party, which was tried four times in the State of Massachusetts, the Supreme Court of that State, in a carefully considered opinion, held that the proviso must be construed to refer to a voluntary criminal act on the part of the insured, known by him at the time to be a crime against the law of the State, and not to mere trespasses against property or infringements of civil laws to which no criminal consequences are attached.    (*Cluff* v. *Mut. Ben. L. Ins. Co.*, 13 Allen, 308, 316, 317; S. C., 99 Mass. 318.) This conclusion is based by that learned court upon the natural import of the words " known violation of law," and upon their being found immediately following the words " by the hands of justice."    A similar construction was adopted by the Supreme Court of Missouri, in the cases of *Harper's Administrators* v. *The Phœnix Ins. Co.* (19 Mo., 500, and 39 Mo., 122); and the case of *Breasted* v. *The Farmers' L. & T. Co.* (4 Seld., 299) has some bearing in the same direction.

The Supreme Court of this State, whose decision is now under review, do not agree to the interpretation given to the proviso by the courts of Massachusetts and Missouri, and a difference of opinion exists between the members of this court as to whether the proviso applies only to violations of the criminal law, or whether it embraces all illegal acts of such a character as to lead to violence.    But, independently of that question, and whatever be the nature of the violation of

law urged by the insurance company, as avoiding the policy, it seems to be clear that a relation must exist between the violation of law and the death, to make good the defence; that the death must have been caused by the violation of law to exempt the company from liability. It cannot be the true meaning of the proviso that the policy is to be avoided by the mere fact that, at the time of the death, the assured was violating the law, if the death occurred from some cause other than such violation.

This position is fully sustained by the opinions of the court in the Massachusetts case, and seems to be conceded by the opinion of the Supreme Court, in the case now under review. Nor do I understand it to be controverted by the members of this court, who differ from the result at which I have arrived.

The more difficult question arises at the next step in the inquiry, namely, whether conceding that the act of Cluff, in attempting to detach the horses of Cox from the wagon was unlawful, and known by him so to be, the fact that his death was caused by that act, was so clearly established by uncontroverted testimony, as to justify the court in withdrawing the case from the jury, and dismissing the complaint.

In examining this question, it is necessary to throw out of view, all circumstances as to which the evidence was conflicting, and to look at the facts in the most favorable light for the plaintiff, in which the jury would have been at liberty to find them.

If any view of the facts, which the jury would have been justified in taking, would have sustained a verdict for the plaintiff, the dismissal of the complaint was erroneous.

Two witnesses only were examined as to the circumstances under which the death occurred. One of them (Scott) testified to a struggle between Cox and the deceased, and a blow inflicted by the deceased upon Cox, which was followed by the shot. The other witness, Dr. Bugbee, testified that he was the nearest person to the parties, and thought he saw all that occurred, but that he saw no scuffle or striking, and he

states positively that the deceased did not assault Cox or threaten him; that the only threat was to take the horses, and there was no threat of personal violence on either side; that Cox was not beaten by deceased, nor personally attacked or assaulted; that after deceased had got possession of the lines, Cox (who had previously jumped from the wagon), started for the house, leaving Cluff standing by the heads of the horses; that when Cox got to the rear of the wagon, he turned, drew a revolver, and shot deceased, and then cocked his pistol to fire again, but hearing deceased say that he was hit, did not shoot again, but ran for the house; that Cluff died in the arms of the witness without uttering a word.

The jury were at liberty to adopt the statement of whichever of these witnesses appeared to them most credible. Although negative testimony is ordinarily of less weight than positive, yet it is not to be disregarded, but the jury have a right to consider it; and where a witness testifies that he was in a position to see the whole transaction, and as to certain things testified to by another witness, states positively that they did not occur, and as to other things, that he did not see them, there is such a contradiction as would justify the jury in discrediting or disregarding the evidence of one or the other of the witnesses.

Adopting the version of the transaction given by Dr. Bugbee, as the jury might have done, had the case been submitted to them, and considering his statement in connection with the other facts proved bearing upon the relations existing between Cox and Cluff, can it be said that beyond all question the act of Cox in firing upon and killing Cluff was caused by his attempt to take the horses, and was not an unjustifiable and wanton act, prompted by feelings of malice and revenge? It is not enough to say that, if Cluff had not made the attempt, he would not have been killed. The killing must have been a natural and reasonable consequence of the attempt to warrant a decision that it was caused thereby. Cluff's going to Louisiana and his taking a lease of the farm were links in the chain of circumstances which ended in his death. If he had

not done those things he would not have been killed as he was. Yet it would not be reasonable to say that those acts were the causes of his death.

In *The Bank of Ireland* v. *Trustees of Evans Charities* (5 House of Lords Cases, 410), the fraud could not have been perpetrated, if the trustees had kept the seal securely. Yet it was held that negligence in the custody of the seal was too remotely connected with the fraud to render the trustees liable; for, as the court say, "the transfer was not the necessary or likely result of that negligence." See opinion of ERLE, Ch. J., in *Ionides* v. *Universal Marine Ins. Co.* (14 C. B. N. S., 259).

The proximate and not the remote cause must be regarded. The immediate cause of death was the shooting; and if Cluff so conducted himself that the shooting was a natural, reasonable and legitimate consequence of his acts, then it may be said that they caused the shooting. But if Cox fired with intent to kill, and his act was wholly beyond the scope of lawful resistance to the trespass of Cluff, and the provocation given by the latter was totally inadequate to excite or justify the character of violence which was used, and if the circumstances of the killing were such that rational men would attribute it to wanton malice rather than to an endeavor to resist aggression or even to natural indignation, then, although the deceased was in the wrong in the first instance, his wrong was but a remote and not a proximate cause of the death, and other causes, for which he was not responsible, intervened. Some analogy is afforded by the common-law rules in respect to acts of provocation, which will reduce a homicide from murder to manslaughter. In the *Commonwealth* v. *Drew* (4 Mass., 396), Chief Justice PARSONS states as a rule of law, that a trespass barely against the property of another, not his dwelling-house, is not a provocation sufficient to warrant the owner in using a deadly weapon; and if he do, and with it kill the trespasser, this will be murder, because it is an act of violence beyond the degree of the provocation; and as a general rule, every willful and intentional killing, with

out a justifiable cause, if done with deliberation, and not in the heat of passion, is murder, and legal malice is always implied in such cases. (Per WALWORTH, Ch. 2 Park's Cr. R., 28.) Here it was not even left to the jury to say whether the killing was in the heat of passion. If the acts imputed to Cluff, though illegal, were not sufficient inducement to the homicide even to reduce the grade of the offence, it can hardly be said that they were the cause of his death.

The diversity in the statements of the witnesses as to the circumstances of the killing, and the necessity of an inquiry into the motive which actuated Cox, render it impossible to determine, as a question of law, that the killing was a reasonable or natural consequence of the acts of Cluff.

So long as the evidence falls short of establishing that the homicide was legally justifiable, I can see no safe rule by which the court could be guided in deciding that the provocation proved was the cause of the killing, and in withdrawing that question from the consideration of the jury.

The learned court in Massachusetts express the opinion that if Cox shot Cluff, not in the course of the affray, but merely to revenge himself for what had been done, the case would not be within the proviso. (13 Allen, 318.)

This distinction is reasonable and seems to be applicable, whether Cluff's violation of law was criminal or not. If Cox abandoned the horses and started for his home, and afterward changed his mind, turned and maliciously shot Cluff, that was a new and independent event. There was some evidence to sustain that theory of the case. Bugbee testifies that Cluff got possession of the lines, and Cox started for the house; Cluff still standing by the horses' heads. That when Cox got to the rear of the wagon he turned, drew a revolver and shot Cluff, and cocked his pistol for a second shot, when, finding that Cluff was hit, he ran away.

It was impossible for the court to say, on this evidence, when Cox first formed the design of shooting, and that he did not intentionally and maliciously take the life of Cluff to satisfy his own feelings of revenge, after the seizure of the

horses had been effected, and he had abandoned them. The accuracy of the aim, and the attempt to fire a second shot at an apparently unarmed man, were circumstances from which malice could be inferred. · Furthermore, there were circumstances from which a hostile state of feeling on the part of Cox could be inferred independently of the taking of the horses. Cluff was turning the family of Cox off the farm, was hurrying their departure, and insisting upon their paying for the feed consumed by their cattle, and the tone of the conversation between Cluff and Cox evinced an angry state of feeling, which may have contributed quite as much as the taking of the horses, to the deadly assault made by Cox.

Under all these circumstances I think that the case should have been submitted to the jury, as requested by the plaintiff's counsel to determine under proper instructions, whether the death of Cluff was caused by a known violation of law on his part, and whether the act of Cox which produced the death, was a natural, reasonable or legitimate consequence of the acts of Cluff. The determination of these questions involved so many doubtful questions of fact, that they could not properly be disposed of by the court. One witness testifies to a personal conflict. The other denies it. If the first witness is to be believed, the blow struck by Cluff may have been the provocation for the shot; but the court could not act upon that statement, because it was contradicted. Under that state of the evidence, to decide the controversy by saying that, if the blow was not struck, the seizure of the horses was the cause of the shot, is subject to the objections, not only that it disposes of the case upon a hypothesis, and without ascertaining the actual facts, but that it involves a disregard of the circumstances tending to show that the shooting was with intent to kill, and a willful and deliberate act of malice or revenge, and does not even leave it to the jury to determine whether the killing was in the heat of passion, caused by the act of Cluff.

It would hardly be contended that if one should intentionally and deliberately kill another in consequence of some slight

violation of a civil right, such as walking across his land without his permission, or other trivial trespass, the case would fall within the proviso, for no one would hesitate to say, that in the case supposed, the unlawful act of the deceased was a totally inadequate cause for the killing. Yet between such an act as that, and one which would in law justify the killing of the offender, there are an infinity of supposable cases involving different degrees of provocation, which cannot be measured so as to determine, as matter of law, their adequacy to produce a fatal result ; and it can hardly be laid down, as a rule of law, that an attempt to take one's horses for debt, without process, but without any threat of personal violence, is of itself an adequate cause for intentionally killing the offender, and that a killing during or immediately after such an attempt, must necessarily be held a legitimate consequence of the act. Such an act may lead to violence, and, if any act of violence of the character which would naturally be resorted to, as a measure of resistance, should result in death, the necessary connection between the original illegal act, and the death, might be established. But the intentional killing of another with a deadly weapon under such circumstances, is a totally different affair, and cannot be held as matter of law, to be a natural or reasonable result or consequence of the original offence. It follows that the uncontroverted facts were not sufficient to justify a dismissal of the complaint, and that the case should have been submitted to the jury with proper instructions.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

Grover, J. (dissenting.) The death of Matthew J. Cluff, whose life was insured by the policy in suit, having been proved, the question arises whether his death occurred under circumstances bringing the case within the proviso making the policy void, in case the death happened under the circumstances specified therein. The proviso declares the policy shall be null and void in case the said Matthew J. Cluff shall die, among other causes, by his own hand, or in consequence

of a duel, or by the reason of intemperance from the use of
intoxicating liquors, or by the hands of justice, or in the
known violation of any law of these States or of the United
States, or of the said provinces, or of any other country which
he may be permitted under this policy to visit or reside in.
The counsel for the appellant has ably discussed the meaning
of the word "in," as showing the construction to be given to
the phrase : known violation of any law of these States, etc.,
and as showing that the word may express various relations,
those of time, place and condition being the most common,
but that sometimes it may express the relation of cause and
effect. This shows, not that the relation expressed is shown
by this particular word, but rather by the other words of the
sentence in which it occurs. It is insisted by the counsel for
the appellant, that in order to bring the case within that part
of the proviso, the death must occur or the cause thereof
happen while the assured is engaged in the known violation
of the criminal law of the State, and that the proviso does
not include the known violation of a law for the protection of
the civil rights of parties, the only sanction of which is a civil
action for redress. This was so held by the Supreme Court
of Massachusetts in *Cluff* v. *The Present Defendant* (13
Allen, 30), which was an action upon another policy issued
by the defendant, containing a proviso similar in all respects
to that in the policy now in suit. That conclusion was
arrived at by the learned court, by an application of the
maxim, *noscitur a sociis*. How this maxim can apply to
the present case, or if applied, how the conclusion deduced by
the court therefrom follows, I am unable to perceive. Among
the associates is that of the death happening by reason of
intemperance from the use of intoxicating liquors. It is
obvious that, if the death happened from this cause, the case
would come within the proviso, whether such use of intoxi-
cating liquors was prohibited by the criminal law of the State
where it occurred or not; applying the maxim to this, it
might with equal propriety be argued that it was not the
criminal law that was had in view by the parties, as that it

was such law because death by the hands of justice is also included in the same proviso. To arrive at the intention of the parties to the contract we must consider the subject-matter in reference to which the language was used. What was the risk to be incurred by the defendant in insuring the life of Cluff? From the policy it appears that the defendant was willing to assume all the general risks to be incurred by such assurance to the extent of the amount insured. From the proviso, it appears that the defendant was unwilling to incur, and, therefore, refused to assume the additional risks to his life incurred, while the assured was engaged in the prohibited acts specified in the proviso, and, therefore, carefully provided that it should not be liable in case of death while engaged in the prohibited acts. Keeping these considerations in view, there will be but little difficulty in arriving at the intention of the parties, and, consequently, at the correct construction of the proviso. It is obvious that the violation of law in which the assured is engaged, whether such law be criminal or civil, must have some connection with the death, as cause and effect; not necessarily the immediate cause, as it is sufficient, if it puts in operation that cause. To illustrate: the sale of lottery tickets is prohibited by the criminal law of New York, no one would contend that had the assured died in the State of New York from heart disease, while engaged in selling lottery tickets, the case would have come within the proviso. It might have been within the strict letter, but not at all within the intention of the parties, for the reason that the violation of law, although criminal, had no possible connection with the death, and in no possible way increased the risk. Again the criminal law of New York prohibits profane cursing and swearing; suppose the death happened from some accident while the insured was violating this law, would this bring the case within the proviso? Clearly not, for the reasons above stated. Again, suppose the death occurred from injury received while the assured was attempting to obtain, by force, the possession of a chattel of which another was in peaceable possession, the title to which was claimed by both, but which

was really in the assured, the case would come within the proviso, for the reason that the risk was increased, and the death caused by the violation of law by the assured, although such law was the civil only, the deceased having committed no breach of the peace or any indictable offence. The Massachusetts court held in the same case, when again before it (99th Mass., 318), that the case would have come within the proviso had the assured, at the time of being shot, in furtherance of his attempt to get the horses from Cox, been committing an assault and battery upon him. The court, I think, must have overlooked the fact that the violation of law, in which the assured was engaged, was eminently calculated to cause violence dangerous to his life to be inflicted upon him, and that the very object of the proviso was to exonerate the defendant from liability, should death occur from this voluntary increase of risk. It follows, that when the death occurs during the known violation of law by the assured, when such violation eminently tends to violence dangerous to his life, the case comes within the proviso. It requires but a bare statement of the facts as to which there was no conflict in the evidence, to show that Cluff was engaged in such known violation of law, at the time he received the fatal shot causing his death in a few moments. He went from Massachusetts to Louisiana early in the winter of 1863–4, and in January or February of that year leased a plantation within the lines occupied by the federal troops, of which one Cox was in possession, but by what title did not distinctly appear. Cox and his family resided in a house upon the plantation, and his stock were kept upon the plantation and consumed some of the feed thereon. Cluff obtained possession of a part of the plantation and made efforts to obtain possession of the residue, but what he did in this respect does not appear. Cox left home, leaving his family in his house and his son, a boy seventeen or eighteen years old, in charge of his affairs. Cluff made out a bill of what he claimed on account of the stock being upon the premises, and caused the same to be delivered to a woman at Cox's house.

A few days after young Cox was going along the road with a pair of horses and wagon loaded with barrels of water. Cluff, upon being informed who it was, called to him to stop, and he did so. After some conversation not material, Cox asked the boy when he was going to pay the bill. The boy replied that he was not going to pay it at all. Cluff then said if he did not he would take the horses and stock. The boy replied he had better begin now. Cluff said, if you think I cannot take them I will show you, and thereupon went to the horse and unhitched the team, seized the lines, and told the boy to give them up, which he refused to do. Cluff then took out a pocket knife to cut the lines. The boy told him not to do that. Cluff desisted from that, went to the horses' heads, and commenced unfastening the lines from the bridle. The boy jumped from the wagon, went behind it, drew a pistol and fired at Cluff, hitting him in the side, causing death in a few moments. That Cluff knew he was violating law, is a proposition too plain for argument. The law of no country would justify his proceedings, which he must have known. The act was immediately calculated to lead to violence dangerous to his life and that of the boy. The case was thus brought directly within the proviso. The rule in this State is, that when facts are proved either by undisputed evidence or such a preponderance of evidence as to require the court to set aside a verdict finding to the contrary, it is the duty of the court to assume the truth of such facts and determine the legal rights of the parties upon such assumption. In Massachusetts it appears from the opinion of Foster, Judge (13 Allen, 316, *supra*), that the rule is different. He says, to establish this defence the burden of proof was upon the company, notwithstanding the evidence tending to prove a forfeiture came from the plaintiff's own witnesses. The case could not be withdrawn from the jury or a verdict for the defendant directed, because the defence rested upon an affirmative proposition, which the company was bound to maintain. The judgment of the General Term affirming that of the cir-

cuit dismissing the plaintiff's complaint must be affirmed with costs.

PECKHAM, J., concurs with GROVER, J., for affirmance.

Chief judge and ALLEN, FOLGER and ANDREWS, JJ., concur with RAPALLO, J., for reversal.

Judgment reversed. New trial ordered.