## GERTRUDE B. MURRAY, APPELLANT, _v._ THE NEW YORK LIFE INSURANCE COMPANY, RESPONDENT.

_Policy of life insurance — condition avoiding it in case the assured dies in consequence of a violation of law — construction of such a provision — submission of specific questions to the jury — when a general verdict is good although the jury are unable to answer the specific questions so submitted._

In an action upon a policy of life insurance it appeared that the assured and his brother made a violent and unlawful attack upon one Berdell in a railroad depot. The brother held Berdell from behind while the assured beat him on the head and face with a raw-hide, inflicting deep and painful wounds from which the blood flowed freely. In the struggle Berdell drew a pistol from his pocket. At about the same instant the assured ceased to strike him, jumped over a lunch counter and attempted to pass through a doorway which lead out of the depot. As he did so he turned his face towards Berdell and at the same instant the pistol was discharged, the ball striking the assured in the forehead and inflicting a wound from which he died in a few days. The fight from its commencement to the shooting lasted about thirty seconds. Upon the trial of this action Berdell testified that he did not intentionally shoot the assured; that in the struggle his hand was drawn towards his pistol pocket; that he drew the weapon without the intention of shooting anyone, and that it was discharged accidentally.

The defense was that the policy was avoided by a breach of a condition contained therein providing that if the assured "should die in or in consequence of the violation of the laws of any nation, State or province, then, and in any such case," the policy should be null and void.

_Held_, that a jury might, from the circumstances of the case, find that the shoot-

ing was a natural consequence of the assured's unlawful assault, and that a verdict finding that to be the fact would not be disturbed by an appellate court.

That it was immaterial whether the death was caused accidentally or was the result of an intention to kill on the part of the one inflicting the wound. So long as there was a violation of the law on the part of the assured, and death as its result, it was immaterial in what manner the death was produced, excepting that there must be a direct connection between the criminal act and the death.

The judge, in the course of his charge, said that it was not necessary for the jury to find that the assured lost his life " under such circumstances as would protect the party taking it under the law, that is, in self-defense," and " that if they found that Berdell discharged the pistol in the heat of passion, naturally excited by the combined attack made upon him by the Murrays, the plaintiff cannot recover."

*Held,* no error.

In submitting the case to the jury the judge requested them to find specifically whether Berdell fired the fatal shot intentionally; whether he was justified in firing for his self-defense, and whether Murray had abandoned the combat when he was shot. The jury found a general verdict for the defendant and stated they were unable to answer the questions.

*Held,* that it was not essential that the jury should agree on any of these questions in order to arrive at a verdict for the defendant, and that the general verdict was regular.

*Ebersole* v. *Northern Central Railroad* (23 Hun, 114) distinguished.

APPEAL from a judgment in favor of the defendant, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*S. W. Fullerton,* for the appellant.

*Joseph H. Choate,* for the respondent.

BROWN, J.:

This action was brought by the plaintiff upon two policies of insurance, issued by the defendant upon the life of Wisner Murray, the plaintiff's husband. Each policy contained a condition that if the assured " should die in, or in consequence of the violation of the laws of any nation, State or province, then, and in any such case," the policy should be null and void.

On the 13th day of July, 1876, the assured and his brother A. S. Murray, Jr., made a violent and unlawful assault upon Robert H. Berdell, in the depot of the Erie Railway Company at Goshen, N. Y.

A. S. Murray, Jr., held Berdell from behind, while the assured beat him on the head and face with a raw-hide, inflicting deep and painful wounds from which the blood flowed freely.

In the struggle Berdell drew a pistol from his pocket. At about the same instant the assured ceased to strike Berdell and retreated towards a lunch counter, over which he jumped, and attempted to pass through a doorway leading out of the depot. As he did so, he turned his face towards Berdell and at the same instant the pistol was discharged, the ball striking Murray in the forehead, inflicting a wound of which he died several days thereafter. There was evidence that at the time he turned and faced Berdell, Murray had a pistol in his hand which he pointed towards Berdell; it was found by his side where he fell. The fight, from its commencement to the shooting of Murray, lasted about thirty seconds. Upon the trial Berdell testified in substance that he did not shoot Murray intentionally; that in the struggle his hand was drawn towards his pistol pocket, that he drew the weapon without the intention of shooting anyone; and that it was discharged accidentally during the struggle. It is conceded that Murray's assault upon Berdell was such a violation of law as to bring it within the terms of the policy, and that if his death was the natural consequence of such violation of the law that the company is relieved from its contract, but the point is now made by the appellant, that as Berdell's testimony of the accidental discharge of the pistol was uncontradicted, that the shooting of Murray cannot be said to have been the natural consequence of the assault, and, therefore, does not fall within the condition of the policies. In other words, that upon this evidence it cannot be said that the assured, who accidentally received a wound which caused his death, died in or in consequence of a violation of the law.

I cannot assent to this proposition. It assumes that the condition is to be read as if it provided against the killing of the assured by some means intended to take his life. The condition is that if he should die while engaged in the violation of the law, or in consequence of such violation, the policy should be void. So that, if while engaged in the perpetration of a criminal act he should, as a direct result of such act, lose his life, the policy would be clearly void, and it would be immaterial whether the death was caused

accidentally or as a result of an intention to kill on the part of the one inflicting the wound. If Berdell had thrown Murray upon the ground, and in so doing his head had struck against some substance which inflicted a wound causing death; or if while engaged in a personal struggle with Berdell, and as a result of that struggle the pistol had been accidentally discharged in Berdell's pocket and Murray had been killed, or if Berdell had thrown Murray from him upon the ground and he had fallen under the wheels of the cars and been killed, I think in either event the policy would have been void as the assurred would, in such cases, have died while engaged in the violation of law; that is, that the assault which he had made upon Berdell would, in the cases cited, have been the direct and proximate cause of his death, and it would be immaterial what Berdell's intention was at the time the death wound was inflicted.

So long as there was a violation of the law upon the part of the assured, and death as its result, it is immaterial in what manner it was produced, excepting that there should be in each case a direct connection between the criminal act and the death of the assured. The assured in company with his brother had made a violent assault upon Berdell, who while struggling with the brother drew the pistol from his pocket. Wisner Murray may or may not have ceased his attack. Certainly, if the testimony as to his drawing and pointing his own pistol at Berdell was to be believed, he had not done so. In the struggle the pistol is discharged and the assured was killed. Had the insurance been upon the life of A. S. Murray, Jr., and had he been killed, could it have made any difference whether the pistol was discharged accidentally or with intent to hit some one? It seems to me that it would not; and that in that case no one would undertake to say that he did not die while engaged in the violation of the law. It can make no difference that the assured had withdrawn a few feet from the scene of the fight at the time of the firing of the pistol. He was either still engaged as an active party in the assault, in which case he died while violating the law; or if he had withdrawn from the fight, then the firing of the pistol was the direct result of a struggle which he had himself precipitated, and his death was the direct and natural consequence of the assault.

But I do not think that it can be said that the evidence as to the

accidental firing of the pistol was uncontradicted to the extent that the court could have disposed of the question as one of law. It is true Berdell so testified, and that no witness did, as no witness could, contradict his statement as to his own intention in discharging the pistol.

It may be remarked, in passing, that this point seems to have been an after-thought on the part of counsel; it was not made on the trial, and no motion or request was made to take the case from the consideration of the jury.

The jury were not bound to. believe Berdell's statement. There were doubtless reasons which might induce him to give to the shooting the coloring that he did. There were certainly facts and circumstances surrounding the transaction which would lead to other conclusions ; and when facts depend upon the credibility of witnesses or upon inferences to be drawn from the circumstances proved, about which honest men might differ, then it is the right of parties to have the question submitted to the jury. Now it certainly was not a conclusive inference from Berdell's testimony that the shooting was accidental; perhaps it was not "intentional" in the ordinary meaning of that word. Berdell may not have been cognizant at the time of the determination in his mind to kill or wound his assailant ; but that being violently and suddenly attacked, assailed with blows calculated to inflict great personal injury, if not to endanger his life, struggling to free himself from his assailants, maddened by repeated assaults and blinded by the blood flowing from his wounds, he suddenly drew his pistol and shot his assailant, was a view of the transaction fairly to be inferred from all the evidence in the case. Whether the act of drawing and discharging the pistol was impulse or intention was wholly immaterial. It certainly was the result of the will power of the man prompted by the strongest impulse of his nature, that of self-preservation.

However it may have happened it was a fair inference, and one which might well be drawn from the whole testimony, that the shooting was the natural and legitimate outcome · and consequence of the violent assault made upon him, and it was for the jury to draw the inference and determine the facts. None of the reported cases present the precise point which the appellant raises in the

present action. The cases are, however, somewhat analogous, and so far as they go support our views.

In the Cluff cases reported (*Cluff* v. *Mutual Benefit Life Insurance Company*, 95 Mass. [13 Allen], 308; S. C., 99 id., 317, and *Bradley* v. *Mutual Benefit Life Insurance Company*, 45 N. Y., 422) there was no question but that Cox when he shot Cluff intended to kill him.

In these cases the condition of the policy was that it should be void, if the assured should die "in the known violation of any law," etc.

Cluff had undertaken to take Cox's horse from him in payment of a debt; while attempting to cut the reins Cox ordered him to desist, which he did, going towards the head of the horse to unloose the lines from the harness. It was a matter of dispute on the testimony whether there was a conflict between Cox and Cluff or not. Cox went away about three rods and then turned and shot Cluff, who died instantly. On the first trial in the Massachusetts court a verdict was directed for the plaintiff. The Supreme Court reversed the judgment, saying: "If it had been found by the jury that the insured, when he was shot, was engaged in a criminal violation of law, known to him to be so, and that such violation of law might have been reasonably expected to expose him to violence, which might endanger life, the court are of the opinion that defense might have been sustained."

Upon substantially the same evidence this case came before our courts. Upon the trial the complaint was dismissed. The Court of Appeals, however (45 N. Y., 432), reversed this ruling, holding that the case should have been submitted to the jury to determine whether "the death of Cluff was caused by a known violation of law on his part, and whether the act of Cox which produced the death was a natural, reasonable or legitimate consequence of the acts of Cluff."

It will be observed that the rulings of the trial courts of Massachussetts and New York were in direct opposition to each other. One holding that there was no violation of law on Cluff's part, and the other that he died in the violation of the law. The appellate courts in each instance reversed these rulings, holding that in neither case could the question be determined as one of law, but should

have been submitted to the jury.    We think that in this action it would have been error for the court to have directed a verdict, and that the case was properly disposed of by submitting it to the consideration of the jury, and we find no grounds for disturbing their verdict.

No errors were committed in that part of the learned judge's charge to which exceptions are taken.  . He followed very closely the principles which had been laid down by the courts in construing the conditions of the policy sued on in the cases I have cited, and in saying to the jury that it was not necessary for them to find that Murray lost his life " under such circumstances as would protect the party taking it under the law, that is, in self-defense," etc., and " that if they found that Berdell discharged the pistol in the heat of passion, naturally excited by the combined attack made upon him by the Murrays, the plaintiffs cannot recover," we think he correctly stated the law.

The question was, did Murray die in or in consequence of the criminal assault which he made upon Berdell ?   This question was to be determined without reference to the question whether Berdell, in taking Murray's life, had also committed a crime.   It might very well be that if Berdell had been indicted, and tried for the killing of Murray, a jury might have said that he was not justified in killing him, and yet such a verdict would not be inconsistent with the fact that Murray died in consequence of his violation of law.

In the case of *Bradley* v. *Mutual Benefit Life Insurance Company* (45 N. Y., 430), Judge RAPPALO says : " The proximate and not the remote cause must be regarded.   The immediate cause of death was the shooting ; and if Cluff so conducted himself that the shooting was a natural, reasonable and legitimate consequence of his acts, then it may be said that they caused the shooting.   But if Cox fired with intent to kill, and his act was wholly beyond the scope of lawful resistance to the trespass of Cluff, and the provocation given by the latter was totally inadequate to excite or justify the character of violence which was used, and if the circumstances of the killing were such that rational men would attribute it to wanton malice rather than to endeavor to resist aggression, or even to natural indignation ; then, although the deceased was in the wrong in the first instance, his wrong was but a remote and not a proximate cause of the

death, and other causes for which he was not responsible intervened. Some analogy is afforded by the common law rules in respect to acts of provocation which will reduce a homicide from murder to man-slaughter." "Here it was not even left to the jury to say whether the killing was in the heat of passion."

At page 432: "It would hardly be contended that if one should intentionally and deliberately kill another in consequence of some slight violation of a civil right, such as walking across his land without his permission, or other trivial trespass, the case would fall within the proviso, for no one would hesitate to say that in the case supposed the unlawful act of the deceased was a totally inadequate cause for the killing, yet between such an act as that and one which would in law justify the killing of the offender there are an infinity of supposable cases involving different degrees of provocation which cannot be measured so as to determine as a matter of law their adequacy to produce a fatal result."

If, therefore, Murray's acts were such as to produce in Berdell a high degree of passion, and while in such state he shot and killed Murray, clearly his death was the natural consequence of the assault. We think the charge as a whole was correct and that the exceptions are not well taken.

In submitting the case to the jury the learned judge requested them to answer specifically three questions: 1st. Did Berdell fire the shot which killed Murray intentionally? 2d. Was the killing of Murray justified on the ground that it was done by Berdell for his lawful self-defense? 3d. At the time Murray was shot had he abandoned the combat? The jury rendered a general verdict for the defendant and stated they were unable to answer the questions. The verdict was received under the plaintiff's objection and exception, and it is now claimed that it was error to receive the verdict unless those specific questions were answered. In submitting these questions to the jury the learned judge stated that he did not consider them at all necessary to a verdict, and we think that it was not essential that the jury should agree on any of them in order to arrive at a verdict for the defendant. In the view of the case I have taken it was certainly immaterial whether Berdell shot Murray intentionally or accidentally. If the assault was the cause of the shooting, then, whether the shot was fired accidentally or otherwise,

the case fell within the proviso. Neither was it material whether Berdell shot Murray in self-defense; and the judge had already instructed the jury that if he shot him in the heat of passion that the plaintiff could not recover. So it was also immaterial whether Murray had abandoned the combat at the time he was shot. If Berdell killed him "in the heat of passion," excited by the attack made upon him, and it was done immediately after Murray had abandoned the combat, then the case fell within the proviso. The jury, therefore, might well have disagreed upon all three of these questions and yet have all reached the conclusion that the death occurred while engaged in the violation of law, or as a natural consequence of such violation. That was the common ground upon which they had to stand to render the verdict for the defendant; and they might well all reach that conclusion, although some should think the shooting accidental and others intentional; some that it was done in self-defense, others that it was done in the heat of passion; some that he had abandoned the combat and others that he had turned to renew the assault upon Berdell with his pistol.

The case of *Ebersole* v. *Northern Central Railway Company* (23 Hun, 114) is not in point. There it was an essential element in the plaintiff's case to show that he was free from contributory negligence. That was the main defense to the case and the jury rendered a verdict for the plaintiff, saying that they could not agree on that question. Until they did agree upon it the plaintiff was not entitled to a verdict. The jury had, therefore, failed to perform their duties and the court properly set the verdict aside.

In this case, however, an agreement on any of the questions submitted was not essential to the defense and the verdict was properly received.

The judgment should be affirmed, with costs.

PRATT, J., concurred; DYKMAN, J., dissented.

Judgment and order denying new trial affirmed, with costs.