# Richmond

## METROPOLITAN LIFE INSURANCE COMPANY v. PATRICIA B. H. GOODWIN, BY &C.

March 12, 1936.

Present, Campbell, C. J., and Holt, Gregory, Chinn and Eggleston, JJ.

The opinion states the case. ·

*Wolcott & Wolcott* and *James N. Garrett,* for the plaintiff in error.

*Robert W. Moffat, Harry A. Brinkley* and *Leo P. Blair,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This action was instituted by Patricia B. H. Goodwin, an infant, suing by her guardian and next friend, against the Metropolitan Life Insurance Company upon a policy issued by said company for her benefit on the life of James K. Henson. The face amount of the policy, payable in case of the death of the insured, was $1,000. There was also affixed to the policy a double indemnity rider, whereby the insurer agreed to pay an additional sum of $1,000 should the insured come to his death by accidental means, as therein limited, provided "that death shall not have resulted from bodily injuries sustained while or as a result of participating in or attempting to commit an assault or felony."

Henson came to his death around four o'clock on the morning of April 2, 1934, as the result of a head-on collision between the automobile he was driving and a car coming from the opposite direction containing three colored men. The insured and the driver of the other car were both instantly killed.

At the time of his death the insured was proceeding towards Portsmouth, Virginia, where he lived, with a cargo of illicit whiskey. When he met the car with which he collided he was driving at a high rate of speed, on the wrong side of a curve in the road, and without head-

lights. That Henson at the time was transporting a large quantity of whiskey upon which no revenue tax had been paid, which act constitutes a felony under the federal law, is not disputed.

The defendant company admitted liability as to the $1,000 covered by the face of the policy, but denied it is liable under the double indemnity clause of the policy on the ground that the evidence showed that the insured came to his death while committing a felony.

The jury found a verdict for the plaintiff in the sum of $998.11, being the face of the policy less a small premium due thereon at the time of the death of the insured, and found for the defendant company as to the double indemnity claim; but, on motion of the plaintiff, the court set aside the verdict of the jury, and entered judgment for the $998.11 due on the face of the policy, and also for the sum of $1,000 claimed under the double indemnity clause. Of this action of the court the insurance company complains.

This above stated action on the part of the court seems to have been based upon the contention of the plaintiff below that in order to avoid liability under the double indemnity clause, it was incumbent upon the insurance company to prove not only that the insured came to his death while committing the felony referred to, but also to prove that the commission of the felony was the direct and proximate cause of the death of the insured.

While our attention has not been called to any case in which the strict rule of "proximate cause" as applicable in actions for negligence has been applied to accident insurance policies such as that in the case at bar, it is generally held that, in order to defeat recovery under policies excluding liability in case of the death of the insured while engaged in, or in consequence of, a violation of law, there must be some causal connection shown between the unlawful act and the death of the insured. This is the general rule. 14 R. C. L., page 1226, and cases cited; *Supreme Lodge Knights of Pythias* v. *Crenshaw,* 129 Ga.

195, 58 S. E. 628, 121 Am. St. Rep. 216, 12 Ann. Cas. 307, 13 L. R. A. (N. S.) 258, and note; *Jordan* v. *Logia Suprema, etc.,* 23 Ariz. 584, 206 Pac. 162, 24 A. L. R. 974, and note; *Bradley* v. *Mutual Benefit Life Insurance Company,* 45 N. Y. 422, 6 Am. Rep. 115; *Bosler* v. *Modern Woodmen of America,* 100 Neb. 570, 160 N. W. 966, L. R. A. 1917C, 195, and note; *Townsend* v. *Commercial Travelers' Mutual Accident Association,* 231 N. Y. 148, 131 N. E. 871, 17 A. L. R. 1001, and note; *Reynolds* v. *Life & Casualty Insurance Company of Tennessee,* 166 S. C. 214, 164 S. E. 602.

The question is, therefore, whether any causative connection between the commission of the felony adverted to and the death of the insured is shown by the evidence in the instant case.

As previously stated, the undisputed evidence shows that the accident occurred about four o'clock in the morning, when the insured was driving his liquor-laden car on the wrong side of the road, at a high rate of speed, and without headlights, towards the city of Portsmouth, where he lived. As corroborative of the testimony on the subject of the speed, it appears that the impact of the collision was such as to drive the engines of both cars back under the front seats and practically demolish both vehicles. It is obvious that the insured was on the road at that hour in the morning for the sole purpose of unlawfully transporting the whiskey in his possession. He knew he was committing an offense for which he was subject to a heavy penalty. Considering these circumstances together, it seems apparent that the death of the insured was brought about by the reckless operation of his car in the effort to get his cargo of illicit whiskey to its destination before daylight and thereby lessen his chances of detection and arrest. We, therefore, think the evidence shows causal connection between the commission of the felony and the death of the insured, and that it is sufficient to justify the verdict of the jury in that respect.

Counsel for the plaintiff cite a number of decisions in support of their contention that no causal connection

was shown in the instant case, all of which have been fully discussed by counsel on both sides and seem to us unnecessary to be referred to and differentiated here. In none of them, however, in so far as we have been able to discover from an examination of these cases, were the provisions of the double indemnity clause of the policy the same as in the instant case, nor were any of them based upon a similar state of facts. In fact, there are innumerable decisions on the subject involving divers forms of contract and circumstances, but they afford us little aid in determining the immediate question here presented. After consideration of the decisions, however, we think it may, on the whole, be safely said that when the facts constitute a continuous succession of events so linked together as to make a natural whole, and it appears that the death was the natural and probable consequence of the unlawful act, the causative connection exists which will defeat recovery under a policy containing the provisions of the policy in the instant case.

Among the cases cited by the insurance company, the case of *Flath* v. *Bankers' Casualty Company,* 49 N. D. 1053, 194 N. W. 739, 740, seems to be directly in point both with respect to the facts, and the reasoning of the court in reaching its conclusion. In that case Flath and a companion were driving an automobile over a highway between forty-five and sixty miles an hour, which automobile contained a large quantity of untax-paid whiskey. The car turned over on the highway and the insured died as a result of injuries received. The insured contended in that case that the illegal transportation of the whiskey contrary to the law of the United States was not the cause of the death of the insured. The Supreme Court of North Dakota, however, dismissed that contention and reversed the judgment in favor of the insured and held as a matter of law a causal relationship existed between the illegal transportation of the whiskey and the death of the insured. In the course of the opinion the court said:

"It appears to us certain that the insured was violating

the federal statutes at the time the accident occurred, in that he was engaged in transporting liquor contrary to law; that the car was being driven at a very high rate of speed in order to enable the insured to reach Fargo with his contraband cargo during the nighttime; that this was for the purpose of enabling him to evade the officers of the law. It is very certain that the transportation of liquor contrary to law is an extremely dangerous business. Surely, no reasonable man can believe that one engaged in such an enterprise is not much more subject to danger of accident than one whose business is that of selling automobile accessories and whose duties are those of a salesman and of supervising the business. Surely, everyone must agree that the accident in this particular case occurred solely and only because the insured and his companion were driving recklessly and taking every chance in order to avoid the possibility of apprehension on account of their unlawful undertaking. The car was very heavily loaded. Its speed was very great. When it turned turtle that happened which reasonably might have been expected."

After careful consideration of the questions presented by the record, we are of the opinion that the action of the trial court complained of was erroneous. The judgment of the jury will, therefore, be reinstated, and judgment entered here in accordance therewith.

*Reversed.*