KANNER, Judge.
Lawrence W. Powell, insured under policy with the New York Life Insurance Company, was shot and killed; the appel-lee company paid the face amount of the policy but refused to pay double indemnity; and Betty L. Powell, the wife of the deceased, brought action seeking recovery under the double indemnity benefit provision of the policy. Based upon the pleadings, depositions, an affidavit, and a certified copy of the testimony given at the coroner’s inquest concerning the death of Lawrence W. Powell, summary judgment was rendered in favor of the company; and Mrs. Powell, feeling aggrieved, has instituted this appeal.
The policy in the principal sum of two thousand dollars stipulated double indemnity in the event “the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means * * * ; provided, however, that such Double Indemnity Benefit shall not be payable if the Insured’s death resulted, directly or indirectly, from * * (c) committing an assault or felony * * .”
The complaint asserted that the death of the insured resulted through accidental means within the quoted terms of the policy. The company, through its answer, admitted certain parts of the complaint and denied others, specifically interposing the defense that double indemnity benefit should not be payable where the insured’s death resulted directly or indirectly from committing an assault or felony.
Factually, the case is not complex, nor are the material facts in conflict. The death of Powell occurred on the night of December 12, 19S8, after the decedent had been drinking heavily of intoxicants. During the course of the evening, he had been violently assaulting Mrs. Powell. He began this abuse by going to her bedroom where she had locked herself in, picking her door lock, grabbing and pulling her downstairs, where he harangued, threatened, and physically abused her. This process was twice interrupted, once by his drinking companion of the past several hours who returned for an article he had left at the Powell home, and the second time by the sixteen year old son of the couple who came in from work about 9:30 p. m. The son, Frederick, was of slight build, weighing about 120 pounds, .while the father was a powerful, muscular man of five feet, eleven and one-half inches in height and weighing 195 pounds. The mother requested the son not to leave the house, and Frederick repaired with his nine year old brother to an upstairs bedroom. Thereafter, Powell continued to harass his wife, pursuing her from room to room, threatening to kill her and assaulting her, at length saying to her, “You might as well know I mean what I say * * * Tonight’s the night you’re *35 going to get it. I told you I was going to make you pay for this.” So saying, Powell with his fist knocked his wife six or seven feet to the sofa, put his knees on her legs and into her stomach, pinned both her arms under his left arm, and beat her with his right hand and fist so severely that, after-wards, her face was bruised and bleeding. At this juncture, Powell was interrupted a third time, and permanently, by sixteen year old Frederick, who had gone downstairs after hearing sounds of the affray, his mother’s cries, and a noise as of someone falling. Observing his mother’s plight, Frederick fatally shot his father.
Testimony reveals that Powell had upon many occasions committed violence against his wife and the three sons of the couple. These included attacks accompanied by threats, respectively, with a butcher knife, a shotgun, and a pistol. Once he broke his wife’s nose, and at another time he left the complete print of his shoe on her thigh where he had kicked her.
There being no genuine issue as to any material fact, the question here is whether summary judgment was rightly granted as a matter of law. We shall not delve into the policy provision relating to death by accidental means but shall, instead, confine our consideration to the problem of whether, under the undisputed facts, the insurer is relieved, by the provision of the policy exception, of double indemnity liability due to the insured’s death resulting either directly or indirectly from committing an assault or felony.
The right of an insurance company to restrict a policy’s liability coverage through exceptions or limitations is recognized by the courts. However, as might be expected, there is a divergence of construction in cases involving assault limitation provisions contained within insurance policies.
Among the cases holding that such a provision does not preclude liability for double indemnity is that of Gilman v. New York Life Ins. Co., 1935, 190 Ark. 379, 79 S.W.2d 78, 97 A.L.R. 755. The limiting clause in the policy was “that such double indemnity shall not be payable if the insured’s death resulted from * * committing an assault or felony.” The facts there considered were, in essence, that the insured, Gilman, while attempting to collect a debt, took hold of his debtor and demanded in a profane way that he pay the debt, whereupon the debtor shot and killed the insured. The court, in reversing judgment rendered for the defendant and remanding the cause for new trial, set forth the basis for its conclusion in these words:
“We cannot agree with appellee that Gilman was as a matter of law committing an assault upon Walker within the meaning of the policy. There is no proof that Gilman was fighting Walker, or that he struck or injured him in any way. It only shows that he caught hold of Walker’s shirt and demanded his pay. Whether he did this before or after Walker reached for his pistol, the evidence is in dispute. We think the word assault as here used means something more than a simple assault. The language is that the double indemnity shall not be paid to the insured ‘from committing an assault or felony.’ If the insured had been killed while committing larceny, burglary, robbery, arson, or any other felony, no liability would attach. The word assault as here used refers to such an assault as would justify the person assaulted in taking his life. In other words, before appel-lee would be exempted from liability under its policy, Gilman must have been guilty of such an assault as justified Walker, acting as a reasonably prudent person, in firing the fatal shot. Whether Gilman made such an assault upon Walker was a question for the jury under proper instructions from the court.”
Another case in this group is that of Riggins v. Equitable Life Assur. Soc., *36 1941, 64 Ga.App. 834, 14 S.E.2d 182, 183. The policy provision involved was that “The insurance under this policy shall not cover accidental injury, death * * * caused directly or indirectly * * * by participating in or in consequence of having participated in the commission of an assault or felony.” The insured, on the night of his death, had gone to a carnival, where his wife found him in the company of another woman. A fight ensued and the insured threatened to kill his spouse with a knife. She returned home; the husband followed and resumed hostilities, but officers called by the wife induced the husband to leave for the night. However, he returned shortly and again uttered threats. The wife obtained a gun; and, as her husband broke in the door, she shot him. The trial judge directed a verdict for the defendant; and the appellate court reversed that ruling, holding that the word “assault”, as it applied to the facts of the case where injury resulted in death, did not mean a simple assault, but such an assault as would justify the person assaulted in taking the life of the assaulter. The court then indicated that whether the insured made such an assault upon his wife or whether the insured’s own wrongful conduct produced his death, or whether he voluntarily and intentionally committed acts from which he foresaw or should have foreseen that death might result under the facts of the case were questions of fact for the jury under proper instructions from the court.
In a further case within this classification, American Life Ins. Co. v. Morris, 1953, 37 Ala.App. 438, 72 So.2d 414, 415, the policy contained the clause, “ ‘This Policy does not cover death caused * * (2) from participation in an assault or felony * * ” The question in that case was whether the death of the insured was the result of participation in an assault or felony within the exclusionary clause of the insurance policy. According to the facts, the insured, upon becoming displeased because her boy friend had visited the room of another girl, slapped the boy friend who then struck the insured with a knife, causing her to bleed to death. The court concluded that the question there posed was one for the jury.
Betty Powell cites these cases for reversal. She urges that the character of the assault in this case is not such as would justify non-liability under the exclusionary clause, but that, at most, the facts require the case to be submitted to a jury.
Adverting to the opposing view, we now consider several cases wherein it was determined that liability for double indemnity benefit was precluded by the exception clause as to committing an assault or felony. In the case of McNamara v. Metropolitan Life Ins. Co., 1945, 133 N.J.L. 48, 42 A.2d 464, the exception clause provided for double indemnity benefit “unless such injuries (injury) * * * is the result of participation in an assault or felony.” The insured in the McNamara case, after attending a dance on the night of February 14, went early the next morning with a friend to a saloon, thence to a restaurant where a former pugilist was having breakfast. Although there was plenty of room elsewhere, the insured sat on a package containing the pugilist’s lunch. An altercation ensued with the insured knocking out one of the pugilist’s teeth, whereupon the men were put out on the street by the restaurateur. There the pugilist struck the insured a blow which felled him, fractured his skull, and resulted in his death. The trial judge found in favor of the beneficiary. The appellate court, setting aside that determination, commented:
“ * * * under the language of the policy, it is enough that death results from his participation in an assault or felony. The insured was the aggressor, he provoked the fight and there is no right of recovery in such a case under the language used in this policy. He invited the encounter and the double indemnity feature falls. If the *37 rule of foreseeable consequences applied — but we think it does not — the result would be the same since a fist fight may result fatally.”
See also McNamara v. Metropolitan Life Ins. Co., 1946, 134 N.J.L. 231, 46 A.2d 798.
Another case holding non-liability under the exclusionary clause is that of Sweeney v. Metropolitan Life Ins. Co., 1937, 30 Cal.App.Supp.2d 767, 92 P.2d 1043, 1044, wherein the exception proviso was that “death shall not have resulted from bodily injuries * * * sustained while or as a result of participating in or attempting to commit an assault or felony.” Factually, it appears that Sweeney, the insured, left the hall where he had been attending a dance, passed some men standing outside, then approached them and asked one of the group, Mulkeen, if he had said something. Upon receiving a negative answer, Sweeney hit Mulkeen and struggled with him. Mul-keen broke away; then Mulkeen’s brother, who was attempting to intercede, was struck by Sweeney and in turn knocked Sweeney down so that his head struck the pavement, causing injury resulting in death. Jury verdict in favor of the plaintiff was returned; motion by the defendant for judgment notwithstanding the verdict was denied ; and on appeal the court reversed the judgment, directing the trial court to enter judgment for the defendant.
Of like import is the case of O’Brien v. Equitable Life Assur. Soc. of United States, 8 Cir., 1954, 212 F.2d 383, 384, wherein the insurance policy excluded payment of double indemnity benefit in the event death was the result of or was caused by “(d) committing or attempting to commit an assault or felony.” Involved in that case were the insured and a temporarily estranged married couple, Robert and Virginia Jackson. Robert, who was at his father’s house some three hundred feet away, heard an outcry and saw something go by a window at his wife’s house, proceeded there with a revolver, found the insured in bed with his wife, and shot him. Although there were no witnesses other than the Jacksons, their testimony showed that the insured was committing an assault or felony for which reason he was shot. The trial court directed a verdict for the defendant-insurer; and, after discussion of law regarding presumptions and burden of proof, the appellate court affirmed that judgment, holding that the evidence failed to present a submissible jury issue.
A similar question was presented in equitable Life Assur. Soc. v. Mitchell, 1947, 201 Miss. 696, 29 So.2d 88, 89. Two insurance policies were involved, one of them providing that the insurer would not be liable for double indemnity if the accident resulted from the commission of “ * * * an assault or felony.” The insured was killed in the wreck of his automobile, in which he was riding as a passenger. The beneficiary attempted to show that the car might have left the highway because of a flat tire, but the appellate court held this evidence to be insufficient. The testimony of the driver of the automobile and of another passenger showed without material contradiction that the accident was caused by the insured’s striking the driver several blows in the face with his fist or hands, causing her to lose control of the automobile and resulting in the wreck. Jury verdict was rendered in favor of the beneficiary, but the appellate court reversed, holding in effect that the trial court should have directed a verdict.
At this point, we may observe that in the present case the coroner’s jury returned a finding of justifiable homicide. In Florida, through statutory definition, section 782.-02(2), Florida Statutes, F.S.A., homicide is justifiable when committed by any person «He * * jn the lawful defense of such person of his * * * parent * * * when there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished * * (Emphasis supplied.)
*38 It was the insured who voluntarily instigated and pursued the course of brutal and violent conduct culminating in his death. The wife did nothing to provoke the cruel action on the part of the husband. She was defenseless, and her only part in the affair was as a recipient of threats and physical attack by a powerful man. He had at previous times threatened her life and on numerous occasions had severely beaten her, as well as the children. The mother realized that she was “in for a night of it” and had requested her son to remain with her. The son had solicitude for the welfare of his mother and naturally this prompted him to protect her from serious bodily harm. Slight of build though he was, he still was his mother’s only hope at the time for protection and succor; and well he knew what both of them had encountered at the hands of his father. It is apparent that he apprehended a serious situation. Frederick himself related that, after his mother’s appeal to him to stay home, he went upstairs, but kept hearing his father threaten his mother. He took two aspirins and lay down; then as his father’s violence worsened, there came the sound of a thud and his mother cried out. Frederick took the pistol, went downstairs, saw his father standing over the couch with his hack to Frederick, beating his mother. He shot his father in the back of the neck. The mother told how her son then put his arms around her and kissed her, saying, “Mama, I didn’t want to do it. I didn’t want to do it, Mama, but I had to.”
So serious a matter was the mistreatment which he had been inflicting upon his wife that he might reasonably have expected resistance. Each step in the course of conduct taken by the insured definitely shows that it was he who voluntarily placed himself in the position from which his death resulted.
As heretofore stated, our consideration of this case has been confined to the one facet relating to the problem of whether the insurer is, by the provision of the policy exception, relieved of double indemnity liability where the insured’s death resulted either directly or indirectly from committing an assault or felony. We think the facts stand for themselves as to the insured’s death having resulted from his commission of an assault within the policy clause. After duly considering and comparatively analyzing the cases here summarized in connection with the factual situation of the present case, we arrive at the conclusion that the able trial judge was correct in the rendition of the judgment entered.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.