William C. Hecht, Jr., J.
The action is brought to recover for the death of an insured under a group insurance policy. Payment is to be made if death of the insured “ resulted from bodily injuries * * * sustained solely through external, violent and accidental means.” However, “no payment shall be made under this policy for any loss resulting from or caused, directly or indirectly, wholly or partly, by * * * 4. comitting or attempting to commit a crime.”
The dispute is not as to the facts, but as to the inferences to be drawn therefrom and the principles of law applicable thereto.
The insured had been married for 19 years. During that period, while under the influence of liquor, he had severely beaten his wife at least 50 times and had frequently attempted to choke her. 'She had never struck back because she was afraid of him and because he was much more powerful than she. She had occasionally called the police in order to stop the arguments.
On the occasion involved in this lawsuit, the insured had his hands around his wife’s throat and his chest over hers. “ His hands were getting tighter and tighter. * * * He mumbled something. He’s going to end it all.” She reached to the sink and picked up a knife. 'She did not think he knew that she had a knife, and was not able to tell him anything because he had her by the throat. She at no time intended to stab him; “ I wasn’t even thinking of the knife. I just happened to have my hand — [indicating].” She was surprised to see the knife in him. “ I felt very excited, I didn’t know what to do.” She attempted to stop the bleeding and called an ambulance, but the insured died.
The court below correctly concluded that it was a jury question whether the death in this domestic altercation “ resulted *821 from bodily injuries * * * sustained solely through external, violent and accidental means.” (Mahar v. Metropolitan Life Ins. Co., 260 App. Div. 961; Shields v. Prudential Ins. Co., 6 N. J. 517; see annotation in 26 ALR 2d 399, 423 — 427.) But the court failed to give full effect to the exclusion from benefits of “ loss resulting from or caused, directly or indirectly, wholly or partly, by * * * committing or attempting to commit a crime.”
It is obvious that the death here resulted from the insured’s commission of the crime of assault. In Murray v. New York Life Ins. Co. (96 N. Y. 614), the policies on the life of Murray contained a condition that they should be void if the assured “ shall die in or in consequence * * * of the violation of the laws of any * * * State. ’ ’ Murray and his brother committed a violent assault on one Berdell. The latter testified that while struggling to release his arm from the brother’s grasp, he accidentally discharged his pistol and thus caused the insured’s death.
In affirming a judgment rendered after a jury verdict for the defendant, the court said (pp. 620-621): “In the case before us it is said that the shooting was accidental and not voluntary or intentional, and consequently was not a death, in or in consequence of a violation of law. What incidents would attend the assault by the Murrays could not be foreseen. They probably did not know that Berdell had a pistol, and if they had known it, they could not have anticipated that it would be discharged in the manner stated by him. But they took the risk of his resistance to any extremity. They took the risk of any injury which might happen to them in consequence of his handling a deadly weapon, whether such injury was intentional or accidental. The case is to be considered under the actually existing circumstances of the assailants and assailed, and if the killing under these circumstances was not an unnatural result of the attack, the case is within the condition. Assuming that Berdell’s statement that the shooting was unintentional was binding on the jury, and that the killing was accidental, yet the accident was the result of the struggle of Berdell to free himself from the grasp of Spencer Murray, am,d the jerking of his arm by the latter. The accident, so called, was caused by the assault, and the risk of injury from the discharge of the pistol ivas occasioned by the criminal act of the Murrays.” (Italics supplied.)
In Bradley v. Mutual Benefit Life Ins. Co. (45 N. Y. 422) the policy contained a similar provision. The insured (Cluff) had had an argument with one Cox about payment of a bill, *822 in the course of which Cluff attempted to unhitch Cox’s horses from his wagon. One witness testified “to a struggle between Cox and the deceased, and a blow inflicted by the deceased upon Cox, which was followed by the shot ”. The other witness testified “ that he saw no scuffle or striking, and he states positively that the deceased did not assault Cox or threaten him; that the only threat was to take the horses, and there was no threat of personal violence on either side; that Cox was not beaten by deceased, nor personally attacked or assaulted; that after deceased had got possession of the lines, Cox (who ¡had previously jumped from the wagon), started for the house, leaving Cluff standing by the heads of the horses; that when Cox got to the rear of the wagon, he turned, drew a revolver, and shot deceased, and then cooked his pistol to fire again, but hearing deceased say that he was hit, did not shoot again, but ran for the house ” (45 N. Y. 428-429).
The trial court had dismissed the complaint, and ordered judgment for defendant. In reversing and directing a new trial, the Court of Appeals .said (pp. 431-432):
“ The proximate and not the remote cause must be regarded. The immediate cause of death was the shooting; and if Cluff so conducted himself that the shooting was a natural, reasonable and legitimate consequence of his acts, then it may be said that they caused the shooting. But if Cox fired with intent to kill, and his act was wholly beyond the scope of lawful resistance to the trespass of Cluff, and the provocation given by the latter was totally inadequate to excite or justify the character of violence which was used, and if the circumstances of the killing were such that rational men would attribute it to wanton malice rather than to an endeavor to resist aggression or even to natural indignation, then, although the deceased was in the wrong in the first instance, his wrong was but a remote and not a proximate cause of the death, and other causes, for which he was not responsible intervened.
# * *
“It was impossible for the court to say, on this evidence, when Cox first formed the design of shooting, and that he did not intentionally and maliciously take the life of Cluff to satisfy his own feelings of revenge, after the seizure of the horses had been effected, and he had abandoned them. The accuracy of the aim, and the attempt to fire a second shot at an apparently unarmed man, were circumstances from which malice could be inferred. Furthermore, there were circumstances from which a hostile state of feeling on the part of Cox could be inferred independently of the taking of the horses. -Cluff was turning *823 the family of Cox off the farm, was hurrying their departure, and insisting upon their paying for the feed consumed by their cattle, and the tone of the conversation between Cluff and Cox evinced an angry state of feeling, which may have contributed quite as much as the taking of the horses, to the deadly assault made by Cox.
‘ ‘ Under all these circumstances I think that the case should have been submitted to the jury, as requested by the plaintiff’s counsel to determine under proper instructions, whether the death of Cluff was caused by a known violation of law on his part, and whether the act of Cox which produced the death, was a natural, reasonable or legitimate consequence of the acts of Cluff. The determination of these questions involved so many doubtful questions of fact, that they could not properly be disposed of by the court. One witness testifies to a personal conflict. The other denies it. If the first witness is to be believed, the blow struck by Cluff may have been the provocation for the shot; but the court could not act upon that statement, because it was contradicted.”
In the case at bar, there are no doubtful questions of fact. Kaminsky died as the proximate cause of the assault on his wife. "Whether or not he should have anticipated his wife’s reaction is not a matter that requires trial. Mrs. Kaminsky was clearly being choked to death. In these circumstances, regardless of what Mr. Kaminsky might have anticipated and, for that matter, regardless of Mrs. Kaminsky’s intent, the insured was engaged in a violent assault which provoked the stabbing, which resulted in his death. Even if he had fallen on the knife while struggling with his wife, so that his death might have been deemed accidental, it would nevertheless have been occasioned by his commission of the criminal act of assault.
While it is true that a policy should be construed in a light most favorable to the insured, the facts in this case do not permit of a jury verdict that the insured’s death was not caused “directly or indirectly, wholly or partly,” by the insured’s “committing or attempting to commit a crime.”
The order of the lower court should be reversed, with $10 costs, and defendant’s motion for summary judgment granted.