AMERICAN CASUALTY COMPANY OF REDDING, PENNSYLVANIA and Larry Richards Silver, Administrator of the Estate of Lynn Richards Silver, Deceased, Plaintiffs and Respondents,

v.

EAGLE STAR INSURANCE COMPANY, LTD., Defendant and Appellant.

No. 14800.

Supreme Court of Utah.

Aug. 8, 1977.

---

Glenn C. Hanni and Roger H. Bullock of Strong & Hanni, Salt Lake City, for defendant and appellant.

H. Wayne Wadsworth and Tim D. Dunn of Hanson, Wadsworth & Russon, Salt Lake City, for plaintiffs and respondents.

CROCKETT, Justice:

Plaintiff American Casualty Co. sought a declaratory judgment that it has no liability in a plane crash which killed four persons, because its policy covering the plane's passengers is secondary and that the policy issued by defendant Eagle Star Insurance Co. is the primary coverage. The defense asserted by Eagle Star was that its policy excepted coverage of "operating the aircraft under the terms of any agreement which provides any remuneration for the use of said aircraft." There was no dispute in the essential facts, as set forth below; and both parties moved for summary judgment.

The problem as presented to the District Court and on appeal is this: if Lynn R. Silver was flying the plane "under any agreement which provides any remuneration" for its use, the exclusionary clause just referred to protects defendant Eagle Star from liability; and the coverage is by plaintiff American Casualty. The District Court rejected defendant's contention and entered summary judgment for the plaintiff. Defendant appeals.

The airplane was owned by Silco Corporation, a Utah corporation which leases and rents real and personal property. Silco Corporation was the named insured in the liability policy Eagle Star issued on the airplane. Silco Corporation had an arrangement with the C.W. Silver Company which sells and distributes electrical equipment, whereby the latter could use the plane, for which it paid all expenses of operation maintenance and storage; and its pro-rata share of the insurance premiums thereon.

The man who piloted the plane at the time of the accident, Lynn R. Silver, was the president of C.W. Silver Co., the vice-president of Silco Corporation and the general manager of both companies. On June, 22, 1972, he and William L. Ferguson and their wives were returning from Vancouver, British Columbia, where they had attended a convention of the Electrical Apparatus Service Association, of which the C.W. Silver Company and Messrs. Silver and Ferguson were members; and the plane was being flown in the course of business of C.W. Silver Co.

The pivotal aspect of the dispute here hinges upon the proper interpretation and application of the above-quoted exclusionary clause in the policy of defendant Eagle Star. Plaintiff argues that the fair import of the language of the exclusionary clause,

which excepts defendant Eagle Star from liability when the plane is operated "under the terms of any agreement which provides any remuneration for the use of said aircraft" is that the defendant Eagle Star is liable unless the plane was rented out for profit; and further, that the mere reimbursement of the owner, Silco Corporation, for the actual expenses of operating the aircraft and sharing pro-rata in the insurance premiums, does not constitute "remuneration" for its use.[1] Wherefore it should be ruled as a matter of law that under the circumstances above described, the operation of the plane did not come within the exclusion. In opposition thereto, defendant argues that under the undisputed facts it should be ruled as a matter of law the other way: that the plane was being operated for "remuneration."

■ In addressing that question, we observe that there is a difference between the defendant's policy and policies which use various language such as any operation for which a "charge is made" or, "a fare is charged."[2] The language used in the defendant's policy, which we assume was used advisedly, seems to be of broader import in saying, "under the terms of *any* agreement which provides for *any remuneration* for the use of said aircraft." A primary meaning of the term "remuneration" is to pay an equivalent for, i. e., in the sense of reimbursing for a service, loss or expense. But it is also sometimes used in the broader sense of simply paying something for such a service, loss or expense.[3] But this does not mean that a profit must be realized.

On the problem here involved, it is important to consider the purpose of the exclusionary clause. The basic commitment of the policy issued by defendant Eagle Star is to the owner of the plane (Silco Corpora-

tion) and to those it permits to use or ride in it gratuitously. The insurance risks are rated in accordance with the amount of exposure reasonably to be expected in such usage. But if in permitting others to use it the owner acquires any advantage to himself, he is more apt to permit such usage and thus increase the number of flights, and accordingly increase the insurer's risk.[4] In this connection there is also to be considered the difference in liability in a gratuitous usage, as compared to a compensated one, under our aircraft guest statute.[5] It seems only reasonable to believe that the foregoing were reasons for the exclusion in defendant Eagle Star's policy excepting operating the plane under any agreement for any remuneration.

On the basis of what has been said in this opinion, our conclusion is this: that if "remuneration" be understood as merely an equivalent, there is no question whatsoever but that the use of the plane was so "remunerated." Further, that even under the broader meaning of paying something for such a service, that inasmuch as the C.W. Silver Company was paying for the entire maintenance of the airplane, including mechanical repairs and engine overhaul and for the hangar fees for storage, there was substantial material benefit to the owner Silco Corporation, which amounted to "remuneration" within the meaning of that term as used in the policy.

■ We have reached our decision herein in awareness of the argument that, although the liability coverage of each policy is $1,000,000, plaintiff American Casualty's policy has what is referred to as a "$10,000 retained limit," (i. e., $10,000 deductible) which leaves the plane crash uninsured to that extent; and we recognize the

---

1. As support for that argument plaintiff cites *Kaus v. Unemployment Compensation Comm.*, 230 Iowa 860, 299 N.W. 415 (1941) and *Anchor Coal Co. v. Public Service Commission*, 123 W.Va. 439, 15 S.E.2d 406 (1941).

2. See *Thompson v. Ezzell*, 61 Wash.2d 685, 379 P.2d 983 (1963) and *Cammack v. Avemco Ins. Co.*, 264 Or. 287, 505 P.2d 348 (1973) dealing with such language.

3. Webster's Third New International Dictionary (1961); and see *Doyal v. Roosevelt Hotel*, 234 So.2d 510, 513 (La.App.1970).

4. *Cammack v. Avemco Ins. Co.*, supra note 2.

5. U.C.A., 2–1–33 (1953).

validity of the rule that if an insurance policy is ambiguous or uncertain, so that it is fairly susceptible of different interpretations, any doubt should be resolved in favor of insurance coverage.[6] But the converse of this is also true: that unless there is some ambiguity or uncertainty, the policy should be enforced according to its terms.

In accordance with our discussion herein, it is necessary that the summary judgment in favor of the plaintiff be vacated and that the declaratory judgment be that the exclusionary clause in the policy of defendant Eagle Star Insurance Company is applicable and thus exempts it from liability in connection with the plane crash referred to. Costs to defendant (appellant). (All emphasis added.)

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

**6.** *Canal Ins. v. Sinclair*, 208 Kan. 753, 494 P.2d 1197 (1972); *Kong Yick Invest. Co. v. Mary-* *land Casualty*, 70 Wash.2d 471, 423 P.2d 935, 23 A.L.R.3d 1226 (1967).