**LDS HOSPITAL, A DIVISION OF INTERMOUNTAIN HEALTH CARE, INC., a Utah corporation, Plaintiff and Appellant,**

v.

**CAPITOL LIFE INSURANCE COMPANY, Defendant and Appellee,**

and

**Joel Miller and Marsha Miller, Defendants and Appellants.**

**INTER–MOUNTAIN CLINIC, INC., Plaintiff and Appellant,**

v.

**CAPITOL LIFE INSURANCE COMPANY, Defendant and Appellee,**

and

**Joel Miller, Defendant and Appellant.**

**Nos. 20990, 21056.**

Supreme Court of Utah.

Oct. 31, 1988.

Thomas A. Duffin, Hans M. Scheffler, Salt Lake City, for LDS Hosp. and Inter–Mountain Clinic, Inc.

Ronald J. Yengich, Salt Lake City, for Joel Miller and Marsha Miller.

David W. Slagle, Salt Lake City, for Capitol Life Ins. Co.

HALL, Chief Justice:

Plaintiffs LDS Hospital and Inter–Mountain Clinic ("Hospitals") appeal a trial court order denying Hospitals' motion for summary judgment and granting defendant

Capitol Life Insurance Company's ("Capitol") motion for no cause of action in regard to its liability under an accident insurance contract. We reverse.

The facts are not in dispute. In October 1981, defendant Joel Miller ("Miller"), while driving intoxicated, struck a vehicle driven by Robert Heinz. The accident was a head-on collision. Heinz died approximately five minutes after the accident occurred, while Miller lived and incurred medical expenses of over $150,000. After Heinz's death, Miller pleaded guilty to manslaughter pursuant to the provisions of Utah Code Ann. § 76-5-205 (1978) (amended 1985). Prior to trial on this cause of action, the parties stipulated that Miller did not deliberately injure or intend to harm Heinz or cause his death. Furthermore, the parties agreed that Miller was an insured under his wife's policy with Capitol. However, Capitol alleged that in this case Miller was not covered under the health and accident policy inasmuch as his medical expenses arose out of an exception provision of the insurance contract. That exception provides in part as follows:

General Exceptions.

If the Insured Person is not legally liable for payment, this policy will not pay a benefit. In addition, it does not pay charges:

. . . .

G. arising out of an attempt at assault or felony. . . .

Upon consideration, the trial court denied Hospitals' motion for summary judgment against Capitol, granted Capitol's motion for no cause of action, and assessed liability for the incurred medical expenses against Miller. On appeal, the cases were consolidated. Hospitals argue that since Capitol's insurance policy, and specifically the exclusion upon which Capitol relied to deny coverage, is ambiguous and uncertain, the trial court failed to apply the recognized rules of construction and erred in denying Hospitals' motion for summary judgment and granting Capitol's motion for no cause of action. We agree.

The interpretation of a written contract may be a question of law determined by the words in the agreement.[1] In this regard, we recently stated that a cardinal rule in construing the contract is to give effect to the intentions of the parties and, if possible, these intentions should be gleaned from an examination of the text of the contract itself.[2] Additionally, it is axiomatic that a contract should be interpreted so as to harmonize all of its provisions and all of its terms, which terms should be given effect if it is possible to do so. If a trial court interprets a contract as a matter of law, as was the case here, we accord its construction no particular weight and review its actions under a correction-of-error standard.[3]

Recognizing such principles, this Court, similar to courts in many jurisdictions, has long subscribed to the view that any ambiguity or uncertainty in the language of an insurance policy must be resolved in favor of coverage. Also, since the policy is drawn by the insurer, ambiguities are construed against that party.[4] One acknowledged rationale underlying this sound determination is the need to afford the insured the protection he or she endeavored to secure by paying premiums.[5] The test to be applied in determining the ambiguity of a contract has been stated by this Court as follows:

Would the meaning [of the language of the insurance contract] be plain to a person of ordinary intelligence and understanding, viewing the matter fairly and

1. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988).

2. *Id.*

3. *Id.*

4. *See Utah Farm Bureau Mut. Ins. Co. v. Orville Andrews & Sons*, 665 P.2d 1308, 1309 (Utah 1983); *Williams v. First Colony Life Ins. Co.*, 593 P.2d 534, 536 (Utah 1979); *American Casualty Co. v. Eagle Star Ins.*, 568 P.2d 731, 734 (Utah 1977); *Auto Lease Co. v. Central Mut. Ins. Co.*, 7 Utah 2d 336, 339, 325 P.2d 264, 266 (1958).

5. *See* 1A J. Appleman & J. Appleman, *Insurance Law & Practice* § 360, at 447–54 (1981); *see also id.* vol. 13 at § 7401 (insurance contracts must be liberally construed in favor of policyholder or beneficiary thereof).

reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy[?] [6]

We have previously applied this test and the liberal construction requirement when interpreting an exclusionary clause contained in an insurance policy. Indeed, in *Browning v. Equitable Life Assurance Society,* [7] we stated:

> When an insured claims a right to recover under the accident provisions of the policy, all he need do is bring himself within the field therein defined and show his injury or disability was proximately and predominantly caused through violent, external and accidental means. He then has brought himself within the policy, and the terms thereof have been met.... When he brings himself within the insuring clause he has made his case ... and any exceptions or conditions which would then deny him relief, take him out of the indemnity provisions, render them inoperative as to him, are matters of defense, and the burden thereof rests upon the insurer....
>
> ....
>
> ... [L]imitations, exceptions or conditions which may relieve the insurer from liability, which may be set forth in the policy outside of the language of the insuring clause, or which may exist outside of the policy entirely, must be made and established by the insurer to escape liability thereunder. [8]

Similarly, the Supreme Court of Washington, sitting en banc, has reiterated:

> There are certain basic principles that apply in any examination of exclusionary clauses in insurance contracts. Chief among these is that exclusionary clauses are to be most strictly construed against the insurer. The policy should be interpreted in accordance with the way it would be understood by the average person purchasing insurance. It must not be forgotten that the purpose of insurance is to insure, and that construction should be taken which will render the contract operative, rather than inoperative. A construction which contradicts the general purpose of the contract or results in a hardship or absurdity is presumed to be unintended by the parties.

These are principles that are not confined to Washington law, but are of nationwide application. The courts of other states have elaborated upon these rules. As stated by the court in *Aetna Casualty and Surety Company v. Haas* [, 422 S.W.2d 316]:

> "Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import. An insurer may, of course, cut off liability under its policy with a clear language, but it cannot do so with that dulled by ambiguity. As with the provisions of the policy as a whole, so also with the exceptions to the liability of the insured, the language must be construed so as to give the insurer the protection which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in his favor."

As noted by the court in *Harris Jolliff & Michel, Inc. v. Motorists Mut. Ins. Co.,* [21 Ohio App.2d 81, 255 N.E.2d 302]:

> "Where exceptions, qualifications or exemptions are introduced into an insurance contract, *a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof."* [9]

In the instant case, Capitol is seeking to escape liability by relying upon an exclusionary clause which is susceptible of several interpretations. However, in view of the above-noted rules and principles of con-

---

6. *Auto Lease Co.,* 7 Utah 2d at 339, 325 P.2d at 266 (footnote omitted).

7. 94 Utah 570, 80 P.2d 348 (Utah 1938).

8. *Id.* at 573–75, 80 P.2d at 350–51 (emphasis deleted; citations omitted).

9. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wash.2d 65, 68, 69, 659 P.2d 509, 511 (1983) (emphasis in original; citations omitted).

struction, Capitol has not sufficiently demonstrated how the contract "exception" in question should allow it to "escape liability thereunder." [10] Instead, Capitol alleges that the language and terms of the policy are not ambiguous and that it has met its burden of proof in this case by the mere fact that the insured pleaded guilty to a felony.[11] We disagree.

First, even if Capitol's construction of the subject provision was accurate, Capitol has not established the required causal relationship between the insured's injuries and a felony violation of law. Indeed, as expressed by the Colorado Supreme Court in *Penn Mutual Life Insurance Co. v. Gibson*,[12] in order to relieve the insurer of liability in such situations, the insured must have been actually engaged in a felony at the time and place of the injury. In *Penn Mutual*, the insured, while driving under the influence of alcohol, caused an accident which resulted in his death. The insurer declined to pay accidental death benefits because the death resulted from "the commission by the [i]nsured of an assault or felony." [13] The Colorado Supreme Court, viewing the issue as one of causation, stated:

> In the instant case the insured's death is not the death "of another" under C.R.S. '53, 40–2–10. And, the question of an assault under C.R.S. '53, 40–2–11 is not involved since such was neither alleged nor was the requisite intent proved.... As to the insured, the event which caused his death, was his collision with another automobile which was precipitated by his wrongful (but non-felonious) acts of driving while intoxicated and operating his vehicle in a reckless manner. The fact that [another individual] was also injured is not what caused [the insured's] death. *A fortiori* the death

was not the result of a felony under the statute.[14]

In urging this Court to adopt the reasoning of the *Penn Mutual* case, Hospitals argue that Miller's injuries in this case were caused by and were a direct consequence of the accident, which was precipitated by his wrongful (but nonfelonious) act of driving while intoxicated. As such, Miller's injuries did not "arise out of" a felony. Indeed, the felony upon which Capitol erroneously relied to deny coverage did not occur or exist until approximately five minutes after the accident, a fact to which the parties stipulated. Therefore, since the "felony" was merely incidental to and occurred only after the victim died and not before or at the time the insured's injuries were inflicted,[15] Miller's coverage, as well as Hospitals' judgment against Capitol, was improperly denied in this case.

Second, the ambiguous language of the subject provision is susceptible to alternative interpretations. Indeed, Hospitals contend that the word "felony" is modified by the word "attempt." They argue that the plain and ordinary use of the word "attempt" implies an "intent," a mental state inapplicable to a manslaughter offense. Additionally, Hospitals note that if "attempt" modifies both "assault" and "felony," Capitol has at least arguably assumed the risk of coverage for injuries resulting from *completed* assaults or felonies. In contrast, if the word "attempt," as interpreted and urged by Capitol, only applies or refers to the word "assault," the conclusion required is that injuries sustained out of an attempted felony or a completed assault are covered under the subject insurance policy, while injuries arising out of a completed felony or an attempted assault are not. Accordingly, since the interpreta-

---

10. *Browning*, 94 Utah at 575, 80 P.2d at 351.

11. In deciding this case, we do not address whether a plea of guilty would satisfy the terms of the subject exception even given the construction Capitol wishes to place upon it.

12. 160 Colo. 462, 418 P.2d 50 (1966) (en banc).

13. *Id.* at 464, 418 P.2d at 51.

14. *Id.* at 466, 418 P.2d at 52 (emphasis in original); *see also* Utah Code Ann. § 41–6–44(3) (1988) (driving under the influence of alcohol misdemeanor classifications).

15. *Compare* Utah Code Ann. § 41–6–44(3) (1988) (driving under the influence of alcohol misdemeanor classifications) *with* Utah Code Ann. § 76–5–205 (Supp.1988) (manslaughter felony classification).

tions are of equal plausibility and since Capitol drafted the policy, any ambiguity must be resolved in favor of the insured and in favor of coverage in this case.[16]

Third, since the general definition section of the policy defines accidental bodily injury as "that which is not intentional and not foreseen" and given the nature of other exclusions indicating that there had to be an intentional act on the part of the insured before coverage would be similarly excluded under the policy, a reasonable person could properly conclude therefrom that the exception for commission of a felony involved only conscious wrongdoings.[17] The case of *Harbeintner v. Crown Life Insurance Co.*[18] supports this determination. In that case, the insured was killed while driving under the influence of alcohol. In denying recovery, the insurer argued that the insured's death was the result of a voluntary, intentional, and willful act and was not caused solely by "accidental means." One exception upon which the insurer relied to deny payment was that which excluded recovery for injuries "incurred to which a contributing cause is the insured's commission of, or attempt to commit, an assault or felony."[19] In rejecting the insurer's argument, the court's decision cited existing Oregon Supreme Court case law for the proposition:

> "[W]e are guided by the principle that it is the common understanding of the term which must be used and not its technical meanings. The insurance company may, of course, insert in its policy any definition of 'accident' it chooses but, in the absence of doing so, it must accept the common understanding of the term by the ordinary member of the purchasing public.
>
> " . . .

> "In situations in which 'accident' or 'accidental' are not defined in the policy, it is for the court to decide the definition which is properly applicable to the particular factual situation, taking into consideration what we believe to be the popular non-technical understanding of the term. . . ."

We agree with Professor[s] Appleman:

> " . . . While drunken driving is dangerous (and should be prevented) the public still regards such an accident as 'accidental'. To rule to the contrary is to deny the terminology of the ordinary meaning given by the public. If the insurer wants to so restrict the meaning of accident, he should insert a specific exclusion as many do."[20]

This principle and the resulting conclusion are supported by our existing case law[21] and our duty to interpret the contract so as to harmonize all of its provisions.[22]

Accordingly, the trial court erred in granting judgment for Capitol. Inasmuch as our decision necessitates that plaintiffs be awarded judgment in this case, we reverse and remand for that purpose.

STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (concurring).

I join the majority in reversing on the ground that the appellee insurer has not shown a causal connection between the felony and the injury. I would not reach the other two grounds advanced by the majority.

HOWE, Associate Chief Justice (dissenting).

I dissent. I cannot agree that for the purposes of the instant case, the exception

---

16. *See supra* note 4 and accompanying text.

17. *See* 1B J. Appleman & J. Appleman, *Insurance Law & Practice* § 511, at 397–99 (1981).

18. 46 Or.App. 579, 612 P.2d 334 (1980).

19. *Id.* at 582 n. 1, 612 P.2d at 336 n. 1.

20. *Id.* at 581, 612 P.2d at 335 (quoting *Botts v. Hartford Accident & Indem. Co.,* 284 Or. 95, 585 P.2d 657 (1978); 1A J. Appleman & J. Appleman, *Insurance Law & Practice* § 467, at 83

(Supp.1979)); *see also Safeco Ins. v. House,* 80 Or.App. 89, 721 P.2d 862 (1986) (some consequences of voluntary intoxication may be accidental); 1A J. Appleman & J. Appleman, *Insurance Law & Practice* § 360, at 447–49 (1981) (definition of "accident").

21. *See, e.g., supra* notes 4, 6.

22. *See supra* notes 1, 4 and accompanying text.

in the insurance policy is so ambiguous that it cannot be applied here. That exception provides that Capitol will not pay charges "arising out of an attempt at assault or felony." Similarly worded exceptions are commonly found in health and accident policies and in double indemnity clauses in life insurance policies. While this particular language could have been written more artfully, for the purposes of the instant case it is clear to me that at a minimum, Capitol did not want to be liable for medical and hospital expenses arising out of the felonious conduct of its insured. It is illogical to suggest, as does the majority, that Capitol excluded only attempted felonies but not completed felonies or excluded only intentional felonies. Exceptions of this nature are employed because of the increased risk of injury to and death of an insured while he is engaging in felonious conduct. Felonious activity can be violent and dangerous and is commonly repelled by victims and police, resulting in injury or death to the perpetrator. Those risks are present whether the insured's conduct is intentional or reckless, as here.

I also dissent from the majority's conclusion that "Capitol has not established the required causal relationship between the insured's injuries and a felony violation of law." I agree with the majority that "in order to relieve the insurer of liability in such situations, the insured must have been actually engaged in a felony at the time and place of the injury." That is exactly what happened in the instant case. Miller was injured while driving under heavy influence of alcohol on the wrong side of a divided interstate highway. He struck one vehicle and then continued on, striking the Heinz vehicle and killing Heinz. Nothing could be more clear than that Miller was actually engaged in a felony at the time and place of his injury. The fact that Heinz died five minutes after the accident is inconsequential. The elements of the crime to which Miller pleaded guilty included not only the death of Heinz, but also the conduct of Miller which precipitated the accident, namely, recklessly driving his automobile on the wrong side of the highway while heavily intoxicated. The majority focuses only on the death of Heinz as if that were the sole element of the crime of manslaughter. The death of Heinz would not have been manslaughter or any other crime unless it had been caused by Miller's preceding reckless and drunken conduct. Since Miller's conduct caused his own injuries and the death of Heinz, it is abundantly clear to me that Miller's injuries did "arise out of a felony" or, simply stated, did arise out of Miller's felonious conduct.

The majority relies entirely upon *Penn Mutual Life Insurance Co. v. Gibson,* 160 Colo. 462, 418 P.2d 50 (1966), where four members of the Colorado Supreme Court held that the accidental death of the insured did not "result from the commission of a felony by the insured." In that case, the insured was driving an automobile under the heavy influence of alcohol. He collided with an automobile driven by Houck. Houck was injured, and the insured was killed. The majority reasoned that the injury to Houck was necessary to make the insured's conduct felonious and since Houck's injuries did not cause the insured's death, the exception in the insured's life insurance policy did not apply. One judge dissented. The fallacy of the court's reasoning is obvious. It focused only on the last act necessary to constitute a felony, namely, the injury to Houck. It completely ignored the other elements of the crime leading up to Houck's injury, which included the insured's heavy intoxication and driving recklessly at a speed of approximately sixty miles per hour, striking the rear-end of Houck's pickup truck which had stopped at an intersection for a traffic light.

*Penn Mutual Life Insurance Co. v. Gibson* represents an aberration in the cases interpreting felony exception clauses. My research indicates that it has been cited with approval by only an intermediate appellate court in New Jersey in *Schwartz v. John Hancock Mutual Life Insurance Co.,* 96 N.J.Super. 520, 531, 233 A.2d 416, 422 (1967). It is significant that the appellants in the instant case have cited only the above two Colorado and New Jersey cases in support of their contention that a causal relationship was lacking here. On the oth-

er hand, there are many cases cited at 43 Am.Jur.2d *Insurance* §§ 580, 581 (1982) and in Annotation, *Construction and Effect of Provisions in Life or Accident Insurance Policies Referring to "Assault," "Felony," "Fighting," etc., by Insured,* 86 A.L.R.2d 443 (1962), which give a broader interpretation to felony exception clauses and support the view that the exception applies when the injury or death to the insured is causally connected to any aspect of the insured's felonious conduct. Representative of these cases is *Metropolitan Life Insurance Co. v. Goodwin,* 166 Va. 119, 123, 184 S.E. 208, 210 (1936), where the court recognized the necessity of some causal connection between the unlawful act and the death of the insured, but held after reviewing the cases on the subject that "when the facts constitute a continuous succession of events so linked together as to make a natural whole and it appears that the death was a natural probable consequence of the unlawful act, the causative connection exists which will defeat recovery" of double indemnity benefits. See also *Powell v. New York Life Insurance Co.,* 120 So.2d 33, 86 A.L.R.2d 437 (Fla. Dist.Ct.App.1960), where it was held that an insured's death resulted from the commission of an assault or felony. There, the insured was shot by his son, who responded to cries of help from his mother, who was being beaten by her husband, the insured.

The California Court of Appeals, in *Romero v. Volunteer State Life Insurance Co.,* 10 Cal.App.3d 571, 88 Cal.Rptr. 820 (1970), expressly rejected the reasoning of the Colorado court in *Penn Mutual Life Insurance Co. v. Gibson,* preferring its earlier decision in *Barker v. California–Western States Life Insurance Co.,* 252 Cal.App.2d 768, 61 Cal.Rptr. 595 (1967), *cert. denied,* 390 U.S. 922, 88 S.Ct. 855, 19 L.Ed.2d 982 (1968). It is important to note that in *Penn Mutual Life Insurance Co. v. Gibson,* the exception in the policy under consideration denied recovery "if death results directly or indirectly from ... (4) the commission by the Insured of an assault or felony." 160 Colo. at 463–64, 418 P.2d at 51. The exception in the instant case is arguably broader since it denies recovery

for expenses "arising out of" a felony. Certainly, Miller's injuries did arise out of his felonious conduct which led to the death of Heinz. For additional cases supporting Capitol's denial of benefits to Miller, see *Kaminsky v. Home Life Insurance Co.,* 45 Misc.2d 819, 258 N.Y.S.2d 266 (N.Y.App. Term 1965); *Waters v. National Life and Accident Insurance Co.,* 156 F.2d 470 (10th Cir.1946); *McDaniel v. Country Life Insurance Co.,* 93 Ill.App.3d 834, 49 Ill. Dec. 260, 417 N.E.2d 1087 (1981); *Mainer v. American Hospital and Life Insurance Co.,* 371 S.W.2d 717 (Tex.Civ.App.1963); and *Barker v. California–Western States Life Insurance Co.,* 252 Cal.App.2d 768, 61 Cal.Rptr. 595 (1967), *cert. denied,* 390 U.S. 922, 88 S.Ct. 855, 19 L.Ed.2d 982 (1968).

The language of the exception in the policy here was "arising out of" a felony. As I have heretofore stated, it should be interpreted to mean "arising out of felonious conduct." In that respect, it is similar to one of the ways in which murder in the first degree may be committed under Utah Code Ann. § 76–5–202(1)(d) (1978, Supp. 1988). There, first degree murder is defined as intentionally or knowingly causing the death of another person "while the actor was engaged in the commission of" certain enumerated felonies. We held in *State v. Johnson,* 740 P.2d 1264 (Utah 1987), that a *res gestae* analysis should be given to the statute so that the killing need not occur at the same instant as the felony, but that the killing and the felony must simply be one continuous interrelated occurrence. In that case, the killing actually preceded the felony, *viz.,* rape of the victim's wife. If a *res gestae* analysis is given to the policy exception in the instant case and the conduct of Miller is looked at as one continuous interrelated occurrence, it is of no significance that Miller's injuries occurred five minutes prior to Heinz's death. At the time Miller was injured, the felony was in progress. Only the final element, namely, the death of Heinz, had not yet occurred, but was only minutes away.